UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| ADALBERTO FLORES SEGURA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:26-cv-00394-JPH-MJD |
| | ) | |
| WARDEN in his or her official capacity as | ) | |
| Warden of the Clay County Justice | ) | |
| Center, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Noncitizen Adalberto Flores Segura is detained at the Clay County Jail on behalf of U.S. Immigration and Customs Enforcement (ICE). Mr. Flores Segura seeks a writ of habeas corpus requiring Respondents to release him from custody.

For the reasons explained below, the Court grants the petition to the extent that it orders the respondents to either afford Mr. Flores Segura a bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) and its regulations or release him from custody under reasonable conditions of supervision.

## I. Facts

Mr. Flores Segura is a Mexican citizen and national. He entered the United States without inspection in 2005 at age 12. He had no interaction with American immigration officials until April 2026. Dkt. 1 ¶ 30.

On April 11, Noblesville police arrested Mr. Flores Segura for driving without a license. Hamilton County authorities contacted ICE, which lodged a

1

detainer. Dkt. 8-1 at 8. On April 13, an immigration officer issued an administrative warrant "command[ing]" that Mr. Flores Segura be arrested pursuant to 8 U.S.C. § 1226. *Id.* at 6. That day, federal officials initiated removal proceedings under 8 U.S.C. § 1229a and took Mr. Flores Segura into custody. *Id.* at 2–8. He remains detained at the Clay County Jail and has not received a bond hearing.

## II. Analysis

Mr. Flores Segura alleges that his continued detention without a bond hearing violates the Constitution and laws of the United States—namely, the Immigration and Nationality Act (INA), its regulations, and the Fifth Amendment's due process clause—and entitles him to either immediate release or a bond hearing. The respondents argue that the INA not only authorizes but requires his detention pursuant to 8 U.S.C. § 1225(b)(2)(A).

Consistent with this Court's previous orders, Mr. Flores Segura's detention is governed by 8 U.S.C. § 1226(a) and is unlawful because he has not been given a bond hearing. Accordingly, the Court orders the respondents to give him a bond hearing or release him from detention.

### A.    8 U.S.C. §§ 1226 and 1225

At issue here are 8 U.S.C. § 1226 and § 1225. While "§ 1226 applies to aliens already present in the United States," U.S. immigration law also "authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). Section 1226 governs the "usual" removal process, which involves an

evidentiary hearing before an immigration judge. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). Proceedings are initiated under 8 U.S.C. § 1229(a), also known as "full removal," by filing a Notice to Appear with the Immigration Court. *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 520 (BIA 2011).

> Section 1226(a) provides:
>
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. [T]he Attorney General—
>
> (1) may continue to detain the arrested alien; and
>
> (2) may release the alien on—
>
>> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>>
>> (B) conditional parole[.]

An immigration officer makes the initial determination to either detain or release the noncitizen. After that initial decision has been made, "[f]ederal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. § 236.1(d)(1)); *see also* 8 C.F.R. § 1236.1(c)(8). At that hearing, the noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2019) (citing 8 C.F.R. §§ 1003.19(a), 1236.1(d)); *see also Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017) ("[T]he burden is on the non-citizen to 'establish to the satisfaction of the Immigration Judge . . . that he or she does not present a

danger to persons or property, is not a threat to the national security, and does not pose a risk of flight.'") (citing *In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006)).

Section 1225(b)(1) deals with "inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled" and provides that immigration officers shall order certain noncitizens removed without further hearing or review unless the noncitizen indicates an intention to apply for asylum. § 1225(b)(1)(A)(i). This applies to noncitizens who have engaged in misrepresentation or have failed to meet document requirements under §§ 1182(a)(6)(C) or 1182(a)(7). *Id.*

Section 1225(b)(2) pertains to "[i]nspection of other aliens." Section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). An "applicant for admission" is "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .)." 8 U.S.C. § 1225(a)(1). In other words, noncitizens subject to 1225(b)(2) are not eligible for expedited removal but are subject to mandatory detention while their removal proceedings are pending.

**B.    Mr. Flores Segura Is Eligible for a Bond Hearing Pursuant to 8 U.S.C. § 1226(a)**

The record reflects that Mr. Flores Segura is eligible for a bond hearing under § 1226(a).

4

The Court has previously determined that, considering § 1225 as a whole, the most natural meaning is that it applies to "arriving" noncitizens attempting to enter the United States rather than undocumented aliens like Mr. Flores Segura who have lived in the interior of the United States for years. *See Alejandro v. Olson*, 817 F. Supp. 3d 672, 677 (S.D. Ind. 2025); *Jackson Rizo v. Swearingen*, Case No. 2:26-cv-00026-JPH-MKK (S.D. Ind. January 23, 2026); *Corzo Martinez v. Olson et al.*, No. 2:26-cv-00003-JPH-MKK, Dkt. 13 (S.D. Ind. January 10, 2026). As the Court has previously explained, Respondents' interpretation of the statute (1) disregards the plain meaning of § 1225(b)(2)(A); (2) disregards the relationship between §§ 1225 and 1226; (3) would render a recent amendment to § 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice. *See Alejandro*, 817 F. Supp. 3d at 677.[1]

In December 2025, the Seventh Circuit issued an opinion in *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025) (*Castañon-Nava I*). There, the Seventh Circuit determined that "seeking admission" cannot be logically seen as synonymous with "applicant for admission" without violating several established canons of statutory interpretation. The Court has relied on that opinion as persuasive authority[2] and

---

[1] The Court incorporates by reference its more fulsome statutory interpretation of 8 U.S.C. §§ 1226 and 1225 and corresponding analysis of the circumstances to which those statutes apply as set forth in *Alejandro*, 817 F. Supp. 3d 672, *Jackson Rizo v. Swearingen*, Case No. 2:26-cv-00026-JPH-MKK (S.D. Ind. January 23, 2026), *Corzo Martinez v. Olson et al.*, No. 2:26-cv-00003-JPH-MKK, Dkt. 13 (S.D. Ind. January 10, 2026).

[2] *See Morales Perez v. Walsh*, 2026 WL 44777, at *2 (N.D. Ill. Jan. 7, 2026) ("[a]t a minimum, *Castañon-Nava* carries substantial persuasive weight. It is true that *Castañon-Nava* cautioned that its decision was limited to 'the current record.' [161 F.4th at 1061]. But the statutory-interpretation issue that the opinion resolved was one purely of law, and any adjustment to the factual record going forward would not likely alter the legal conclusion. In any event, as explained below, the Court agrees with *Castañon-Nava*'s holding on the legal question, so there is no need here to definitively decide whether it is binding precedent or something short of that.").

continues to do so after the Seventh Circuit's most recent opinion in *Castañon-Nava*. *See* 175 F.4th 828 (7th Cir. 2026) (*Castañon-Nava II*).

Respondents cite a recent Fifth Circuit Court of Appeals decision, which upheld the government's interpretation of § 1225(b)(2)(A) in finding that "seeking admission" is a permissible redundancy for "applicant for admission." *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 503 (5th Cir. 2026) ("The Supreme Court has observed that 'redundancies are common in statutory drafting—sometimes in a congressional effort to be doubly sure, sometimes because of congressional inadvertence or lack of foresight, or sometimes simply because of the shortcomings of human communication' . . . . That seems doubly true where the ordinary meaning of the terms involved overlap. Because being an applicant ordinarily entails seeking something, it seems natural to use the words somewhat interchangeably.") (quoting *Barton v. Barr*, 590 U.S. 222, 239 (2020)). Even if the terms refer to different things, the Fifth Circuit found that petitioners such as Mr. Flores Segura can be said to be "seeking admission" even though they have resided within the country for years and are not affirmatively seeking to enter the United States. *Id.*

Respondents also cite a recent Eighth Circuit case, *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026)). The *Avila* court held that the meanings of "applicant for admission" and "seeking admission" and the grammatical structure of 8 U.S.C. § 1225(b)(2)(A) show that "in the context of the statute the two phrases are synonymous." *Id.* at 1135.

6

Countering those circuit decisions, the Second Circuit recently decided *Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026). There, the Second Circuit rejected the government's argument and adopted the reasoning set forth in *Castañon-Nava I*: "Although divided panels in two other circuits have agreed with the government, . . . we respectfully find the statutory analysis in those decisions, which largely mirrors the government's flawed arguments in this case, to be unpersuasive." *Id.* at 75. The court went on to conclude that "because Section 1225(b)(2)(A) applies only to a noncitizen who is both an 'applicant for admission' and 'seeking admission,' it does not apply to Petitioner." *Id.* at 74. The Eleventh Circuit recently joined the Second Circuit in rejecting the government's expansive interpretation of § 1225. *Hernandez Alvarez v. Warden*, 175 F.4th 1258 (11th Cir. 2026).[3] The Sixth and Tenth Circuits recently came to similar conclusions. *See Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026);[4]

---

[3] "Simply put, the language that Congress has chosen to use does not grant to the Executive unfettered authority to detain, without the possibility of bond, every unadmitted alien present in the country. Nowhere in the text, structure, or history of the INA does that reading find steady footing. We are obliged to read the words found in the statute—'an alien who is an applicant for admission' and 'an alien seeking admission'—in line with the meaning Congress has given them. When we do so, it appears to us that Congress has instead preserved the longstanding border-interior distinction for purposes of detention, a position it has taken for over a hundred years." *Id.* at 1285.

[4] "We therefore find that an 'applicant for admission' is not necessarily 'seeking admission.' Because no Petitioner is alleged to be seeking admission or lawful entry into the United States, § 1225(b)(2)(A)'s mandatory detention scheme does not apply to them. And since '§ 1226 applies to aliens already present in the United States' and 'creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings,' Petitioners could have been detained pursuant to only § 1226." *Id.* at 732.

*Santillan Quiroz v. Mullin,* No. 26-6019, 2026 WL 1876709 (10th Cir. June 30, 2026).[5]

This Court is not convinced that the Seventh Circuit will eventually join the *Buenrostro-Mendez* and *Avila* side of the circuit split. So, in line with *Castañon-Nava I* and now *Cunha, Hernandez Alvarez, Lopez-Campos,* and *Santillan Quiroz,* the Court continues to rely on its previous conclusion that § 1225(b)(2)(A) does not apply to undocumented aliens like Mr. Flores Segura who have lived in the interior of the United States and were arrested on an administrative warrant "command[ing]" that he be arrested pursuant to 8 U.S.C. § 1226. Dkt. 8-1 at 6.

Furthermore, Respondents' legal reasoning cannot not be reconciled with the government's treatment of Mr. Flores Segura, *i.e.,* arresting him in the interior of the United States pursuant to an administrative warrant that explicitly authorized his detention under § 1226 and initiating full removal proceedings. Given the government's treatment of Mr. Flores Segura, it cannot plausibly now maintain that he is subject to § 1225(b)(2)(A) and therefore categorically ineligible for discretionary release. *See Singh v. Bondi,* No. 1:25-cv-02101-SEB-TAB, 2025 WL 3029524, at *6 (S.D. Ind. Oct. 30, 2025) (citing *Patel v. Crowley,* 2025 WL 2996787, at *6 (N.D. Ill. Oct. 24, 2025); *Kennedy v. Kijakazi,* No. 22-2258, 2023 WL 1990303, at *3 (7th Cir. Feb. 14, 2023)).

---

[5] "The only time a noncitizen can be said to be seeking admission is when he is seeking to enter the United States at the border. Since § 1225(b)(2)(A) applies only to those seeking admission, § 1225(b)(2)(A) is likewise limited to the border." *Id.* at *7 (footnote omitted).

8

The facts here are also quite different from *Buenrostro-Mendez* where the court's analysis did not indicate that the petitioners were arrested pursuant to an administrative warrant and then served with a Notice to Appear for full removal proceedings. *See Buenrostro-Mendez,* 166 F.4th at 500 ("DHS encountered each petitioner in 2025, and, upon inspection, immigration officers determined that each was inadmissible as an alien present in the United States without having been admitted or paroled . . . DHS commenced removal proceedings under 8 U.S.C. § 1229a against both petitioners, directing that they be detained under 8 U.S.C. § 1225(b)(2)(A) for the duration of those proceedings."). In *Avila,* the petitioner was served with a Notice to Appear, but the record is silent as to whether he was arrested pursuant to an administrative warrant. *See* 170 F.4th at 1132. In contrast, Mr. Flores Segura was served with an administrative warrant that authorized federal agents to detain him pursuant to § 1226. *Buenrostro-Mendez* and *Avila* therefore do not necessarily apply to the facts here.

In sum, the record demonstrates that Mr. Flores Segura's detention is authorized only by § 1226(a), entitling him to consideration of bond.

## C. Scope of Relief

Mr. Flores Segura is eligible for release on bond under § 1226(a), and he has not received a bond hearing. His continued detention without a bond hearing therefore violates "the laws or treaties of the United States." 28 U.S.C.

§ 2241(c)(3). The remaining question is the remedy, which should be "appropriate to the violation." *Waller v. Georgia*, 467 U.S. 39, 50 (1984).

Mr. Flores Segura asks for immediate release from custody, which is the customary remedy in habeas proceedings. *See Thuraissigiam*, 591 U.S. at 107 ("Habeas has traditionally been a means to secure release from unlawful detention."); *Munaf v. Geren*, 553 U.S. 674, 698 (2008) (explaining that "the quintessential habeas remedy" is release from custody). The Court finds that immediate release would not be in the interests of justice here. The Court has found that Mr. Flores Segura is subject to § 1226(a), which may allow the government to "continue to detain" him. 8 U.S.C. § 1226(a)(1). Mr. Flores Segura's custody is therefore not unlawful because he is detained, but because he has not received the bond hearing that the law requires.

As an alternative to immediate release, Mr. Flores Segura asks the Court to direct the immigration judge assigned to his case to undertake specific considerations during his bond hearing, enjoin the respondents from staying his release if he is granted bond, and retain jurisdiction over the bond determination. Dkt. 1 at 24–25. This request is premature. The Court has ordered Respondents to either provide Mr. Flores Segura with an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) and its regulations or release him. If Mr. Flores Segura is not released after a bond hearing and believes that his hearing was deficient thereby making his continued detention unlawful, he may file a post-judgment motion raising such claims.

**D.    Remaining Claims**

Because the Court has found that Mr. Flores Segura's detention violates the INA, it does not reach his arguments that his detention violates the INA's regulations or the Fifth Amendment. *See Thomas v. Illinois*, 697 F.3d 612, 613 (7th Cir. 2012) ("[C]onsistent with the principle of avoiding unnecessary constitutional decisionmaking, judges are to address the statutory defense before the constitutional.").

## IV. Conclusion

The petition for a writ of habeas corpus is **granted** insofar as the respondents will have **ten days**[6] to either (1) provide Mr. Flores Segura with an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) and its regulations, or (2) release him from detention under reasonable conditions of supervision. The respondents must notify Mr. Flores Segura's counsel of the setting of any bond hearing. Respondents must file documentation certifying that they have either provided the bond hearing or released Mr. Flores Segura within **two days** after the hearing or his release, whichever is applicable.

The petition is **denied** to the extent it seeks immediate release.

The **clerk is directed** to enter **final judgment**.

**SO ORDERED.**

Date: 7/6/2026

*James Patrick Hanlon*

James Patrick Hanlon
United States District Judge
Southern District of Indiana

---

[6] This deadline may be modified without need for Court involvement upon agreement by Mr. Flores Segura and the federal respondents.

11

Distribution:

Daniel Chin
Flora Legal Group
daniel.chin@floralegalgroup.com

Liberty L. Roberts
Church Church Hittle & Antrim
lroberts@cchalaw.com

Shelese M. Woods
DOJ-USAO
shelese.woods@usdoj.gov